WHITE v THE DETROIT EDISON COMPANY

WHITE v CITY OF ANN ARBOR

1. MUNICIPAL CORPORATIONS—PUBLIC UTILITIES—COMMUNITY AN-
   TENNA TELEVISION SYSTEMS—EASEMENTS—STATUTES.

   A community antenna television system is a "public utility"
   within the meaning of the Subdivision Control Act and is
   therefore entitled to use of an easement which is reserved for
   public utility access upon a private residential lot (MCLA
   560.102[1]; MSA 26.430[102] [1]).

2. CONSTITUTIONAL LAW—FRAMERS OF CONSTITUTION—KNOWLEDGE OF
   LAW.

   The framers of a constitution are presumed to have a knowledge
   of existing laws and to act in reference to that knowledge.

3. MUNICIPAL CORPORATIONS—PUBLIC UTILITIES—COMMUNITY AN-
   TENNA TELEVISION SYSTEMS—CONSTITUTIONAL LAW.

   A community antenna television system is a public utility within
   the meaning of a provision of the constitution which provides
   that a municipality shall not grant to a public utility a fran-
   chise not subject to revocation at the will of the city or village
   without prior approval by the municipality's electors (Const
   1963, art 7, § 25).

Appeal from Washtenaw, Edward D. Deake, J.
Submitted November 7, 1977, at Lansing. (Docket
Nos. 30308, 77-2136.) Decided December 22, 1977.

Complaint by Elmer E. White against The De-
troit Edison Company and Michigan CATV Associ-
ates for damages for trespass and for an account-
ing. Summary judgment for defendants. Plaintiff

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 74 Am Jur 2d, Telecommunications § 147 *et seq.*
[2] 16 Am Jur 2d, Constitutional Law §§ 64, 65, 72, 78.

appeals. Case consolidated with No. 77-2136 for submission and decision. Affirmed.

Complaint by Elmer E. White against the City of Ann Arbor for a declaratory judgment that the city's community antenna television system ordinance is unconstitutional or in the alternative, that portions of the ordinance are unconstitutional, or that the city be required to hold an election to obtain approval of the ordinance. Defendant's motion for accelerated judgment, based upon plaintiff's alleged lack of standing to bring the action was denied. The plaintiff was granted summary judgment and the court declared the ordinance to be unconstitutional. Defendant appeals. Case consolidated with No. 30308 for submission and decision. Affirmed.

*White & Carter,* for plaintiff.

*James J. Daskaloff,* for The Detroit Edison Company.

*Forsythe, Campbell, Vandenberg, Clevenger & Bishop, P. C.* (by *David T. Bell),* for Michigan CATV Associates.

*R. Bruce Laidlaw,* City Attorney, for the City of Ann Arbor.

Amicus Curiae: Michigan Association of Municipal Attorneys (by *George A. Weible* and *Louis C. Andrews, Jr.).* City of Grand Rapids (by *G. Douglas Walton,* Deputy City Attorney).

Before: QUINN, P. J., AND V. J. BRENNAN and C. L. BOSMAN,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

QUINN, P. J. On motion of plaintiff, these two appeals were consolidated for submission and decision. In No. 30308, plaintiff appeals a summary judgment entered in favor of defendants. In No. 77-2136, defendant appeals a summary judgment entered in favor of plaintiff.

Plaintiff owns a residential lot located in Ann Arbor, the rear six feet of which are reserved by easement for public utility access. Defendant Detroit Edison, hereinafter Edison, maintains poles and transmission lines across that easement. Michigan CATV Associates, hereinafter CATV, held a franchise from Ann Arbor to operate a community antenna television system within the city. In exercising the franchise, CATV contracted with Edison to string cable TV wires on Edison poles. The installation of such wires across the easement on plaintiff's property generated this litigation. Section 2.105 of CATV's franchise provides:

"The poles used by Grantee's transmission and distribution system, wires and appurtenances shall be located, erected and maintained on existing utility facilities where possible, and Grantee shall go underground when utilities do but not necessarily in the utility facilities."

By his action in No. 30308, plaintiff sought damages for trespass by CATV and for an accounting from Edison for all monies paid to it by CATV since January 1, 1974, for use of Edison poles by CATV. The latter relief was sought on a theory of unjust enrichment.

CATV alleged that it was a public utility within the meaning of the Plat Act, being MCLA 560.1 *et seq.;* MSA 26.431 *et seq.,* now the Subdivision Control Act of 1967, being MCLA 560.101 *et seq.;* MSA 26.430(101) *et seq.* In granting summary

judgment in favor of defendants, the trial court held that CATV was a public utility within the meaning of MCLA 560.102(1); MSA 26.430(102)(1) and that as such it was entitled to use Edison poles under contract with Edison. Thus no trespass occurred and there was no foundation for plaintiff's claim for an accounting from Edison.

MCLA 560.102(1); MSA 26.430(102)(1) provides:

" 'Public utility' means all persons, firms, corporations, copartnerships or municipal or other public authority providing gas, electricity, water, steam, telephone, sewer, or other services of a similar nature."

We hold that CATV comes within *"other services of a similar nature"* and is a public utility within the Subdivision Control Act. Therefore, we affirm the trial court.

In No. 77-2136, plaintiff filed a complaint for a declaratory judgment declaring defendant's community antenna system ordinance unconstitutional, or, in the alternative, declaring certain sections thereof unconstitutional, or, alternatively, that the court order defendant to hold an election so the electors of defendant could express themselves on the ordinance. The theory on which this action was based was that community antenna television systems are public utilities within Const 1963, art 7, § 25.

Defendant's answer denied that community antenna television systems are public utilities; alleged that no justiciable case or controversy existed and that plaintiff lacked standing to bring the action.

In granting summary judgment in favor of plaintiff, the trial court held that community antenna television systems are public utilities within the constitutional provision specified above, that a

justiciable case existed and that plaintiff had standing.

The antecedent provision of Const 1963, art 7, § 25, was Const 1908, art 8, § 25, which read in pertinent part:

"Nor shall any city or village acquire any public utility or grant any public utility franchise which is not subject to revocation at the will of the city or village, unless such proposition shall have first received the affirmative vote of three-fifths of the electors of such city or village voting thereon at a regular or special municipal election; * * * ."

In *Holland v Clerk of Garden City*, 299 Mich 465; 300 NW 777 (1941), the Supreme Court held that the last quoted constitutional provision applied only to public utilities for supplying water, light, heat, power and transportation. The *Holland* case involved acquiring by construction certain water and sewer mains.

Const 1963, are 7, § 25, reads:

"No city or village shall acquire any public utility furnishing light, heat or power, or grant any public utility franchise which is not subject to revocation at the will of the city or village, unless the proposition shall first have been approved by three-fifths of the electors voting thereon. No city or village may sell any public utility unless the proposition shall first have been approved by a majority of the electors voting thereon, or a greater number if the charter shall so provide."

Since the framers of a constitution are presumed to have a knowledge of existing laws and to act in reference to that knowledge, *People ex rel Hughes v May,* 3 Mich 598 (1855), the change in language

and structure found in Const 1963, art 7, § 25 as compared to Const 1908, art 8, § 25, reflects the intent of the framers of the constitution of 1963 to make sure that the limited application of Const 1908, art 8, § 25, as reflected by *Holland, supra,* was assured in Const 1963, art 7, § 25. This analysis comports with the convention comment found at the end of Const 1963, art 7, § 25: "The words 'furnishing light, heat or power' are added to the second sentence to define the power of municipalities to acquire utilities. The three-fifths majority required for purchase of a utility is continued because such purchase implies commitment to a large investment of public funds and should not be lightly undertaken. The municipality should have sound assurance that the utility will be supported by its citizens."

In *Schurtz v Grand Rapids,* 208 Mich 510, 524; 175 NW 421 (1919), public utility is defined as: " '[P]ublic utility' means every corporation, company, individual, association of persons, their trustees, lessees, or receivers, that may own, control, or manage, except for private use, any equipment, plant or generating machinery in the operation of a public business or utility. Utility means the state or quality of being useful." Under the reasoning of *May, supra,* the framers of Const 1963 adopted that meaning for public utility in Const 1963, art 7, § 25. That meaning is broad enough to include community antenna television systems and the trial court correctly found them to be within the constitutional provision referred to.

There was a justiciable case and plaintiff had standing. We affirm the trial court.

No. 30308 is affirmed with costs to defendants. No. 77-2136 is affirmed with costs to plaintiff.